**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

VOICES FOR INDEPENDENCE (VFI), )
et al., )
)
         Plaintiffs, )
)
     v. )
)
COMMONWEALTH OF )
PENNSYLVANIA DEPARTMENT )
OF TRANSPORTATION, et al., )
)
         Defendants. )

Civil Action No. 06-78 Erie

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.,

On March 28, 2006, Plaintiffs, an entity known as Voices for Independence
("VFI") and several disabled persons, filed a class action complaint in the above-
captioned case against the Commonwealth of Pennsylvania Department of
Transportation ("PennDOT") and Allen D. Biehler, the Commonwealth's Secretary of
Transportation (collectively, the "Commonwealth Defendants"). The complaint alleged
violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*
("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* ("Rehabilitation
Act"), arising from PennDOT's failure to install federally mandated curb ramps along
PennDOT highways located in the cities of Erie and Meadville, Pennsylvania. On
September 7, 2006, Plaintiffs filed an amended complaint joining the cities of Erie and
Meadville as Defendants in the case.[1]

---

[1] The City of Erie had previously been sued in related litigation for alleged ADA
violations relative to defective curb ramps located on city-owned streets. *See Barrier
Busters v. City of Erie, Pennsylvania*, No. 1:02cv203 (W.D. Pa.). The City of Meadville
had likewise been sued in related litigation for alleged ADA and Rehabilitation Act
violations occurring along city-owned streets. *See Voices For Independence v. City of
Meadville, Pennsylvania*, No. 1:04cv328 (W.D. Pa.). These lawsuits were previously
resolved in part through the entry of certain consent decrees.

Initially, the cities of Erie and Meadville were not named as Defendants in the
instant litigation because the curb ramps at issue herein are located along state

Presently pending before the Court are a motion for summary judgment filed by the Commonwealth Defendants and a motion for partial summary judgment filed by the City of Meadville, Pennsylvania.  Our jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343(a)(3).  For the reasons set forth below, Defendants' motions will be denied.

## I.  BACKGROUND

VFI is a membership organization which seeks to promote increased opportunities for the disabled to live independently throughout the Commonwealth of Pennsylvania.  VFI's mission includes promoting disabled persons' access to housing, employment and recreation.  The fourteen individual Plaintiffs are all disabled persons living in and/or traveling through Erie and Meadville or their surrounding areas who cannot ambulate without wheelchairs or other assistive devices.  Certain of the individual Plaintiffs have sight impairments and therefore require the use of detectible warnings.

The gravamen of Plaintiffs' complaint is that, since at least January of 1992, Defendants have engaged in a continuing pattern and practice of failing to install, repair or adequately maintain curb ramps at intersections and sidewalks throughout the Erie and Meadville areas as mandated by the Rehabilitation Act and the ADA and their implementing regulations.  Because of Defendants' failure, it is alleged, Plaintiffs and those persons employed or served by VFI cannot ambulate or travel safely on the streets or sidewalks in and around Erie and Meadville.  Consequently, these individuals must frequently travel in the stream of traffic and along the curb until they can locate a private driveway or business to re-enter the sidewalk.

─────────────────────

highways that run through those jurisdictions.  The cities were later joined, however, as a result of PennDOT's contention that it has no legal responsibility to remediate non-compliant ramps in locations where state roads intersect with municipal roads. PennDOT has essentially maintained that its responsibility ends at the curb face and that the adjoining sidewalks or curb ramps are the responsibilities solely of the local municipalities.

Plaintiffs' complaint asserts two separate causes of action against the Defendants for alleged violations of the ADA (Count 1) and the Rehabilitation Act (Count 2).  In their complaint, Plaintiffs seek both declaratory and injunctive relief.  Specifically, they request a court order directing Defendants to retrofit their intersections and sidewalks to make them readily usable and safe for disabled persons.  They also seek an order directing Defendants to enact a detailed system that will ensure compliance with all federal law in the future.

On December 22, 2006, the Commonwealth Defendants and the City of Meadville entered into a court-approved settlement agreement with the Plaintiffs, pursuant to which the City of Meadville and PennDOT agreed to share responsibility for the remediation of non-compliant ramps at intersections where future road resurfacing work is to be performed.[2]  In addition, the Defendants agreed to a schedule to retrofit those existing non-compliant ramps which should have been remediated as part of resurfacing work performed within the 2-year period predating litigation.[3]  With respect to older, noncompliant ramps, no agreement could be reached as to whether the applicable statute of limitations would relieve the Defendants of their legal obligations to undertake remediation.

Accordingly, under the terms of the Settlement Agreement, the parties have reserved the right to file dispositive motions on the following legal question:  whether claims relating solely to noncompliant curb ramps which were altered, installed, replaced or repaired after January 26, 1992 (the effective date of the ADA) but more than two

---

[2] The City of Erie is not a party to this agreement.

[3] PennDOT's "two-year look-back period" would begin on March 28, 2004, as this litigation was commenced on March 28, 2006.  Meadville's "two-year look-back period" would apparently begin on November 10, 2002 to correspond with the commencement of litigation in Civil Action No. 04-328.  *See* n.1, *supra*.

years prior to the commencement of litigation are barred by any statute of limitations.[4] The parties have since filed their motions and briefs concerning this limited legal issue and the matter is now ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law.  *Fed. R. Civ. P. 56(c)*. In reviewing a motion for summary judgment, we view the facts in a light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001); *Gottshall v. Consolidated Rail Corp.,* 56 F.3d 530, 533 (3d Cir. 1995).

When a defendant moves for summary judgment on the basis of an affirmative defense for which it would bear the burden of proof at trial, the defendant must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 (3d Cir. 1999).  Thus, "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transportation Brokerage Co., Inc.*, 213 F.3d at 480. Assuming the moving party meets its initial burden of proof, the non-moving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

---

[4] The City of Meadville's motion only concerns its legal obligations with respect to curb ramps located at PennDOT intersections.  As noted previously, the City's obligations with respect to curb ramps located on city-owned intersections were resolved by the consent decrees entered at Civil Action No. 04-328.  *See* n.1, *supra*.

### III.  DISCUSSION

Plaintiffs' ADA claim, as set forth in their first cause of action, arises under §§ 202, 226 and 227 of Title II of the Act, 42 U.S.C. §§ 12132, 12146, and 12147. Pertinently, § 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[5]  Such discrimination includes the "construct[ion]" of a "new facility to be used in the provision of designated public transportation services" that is not "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Id.* at § 12146.  Discrimination also occurs when "alterations" made to an existing facility fail to ensure, "to the maximum extent feasible," that "the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Id.* at § 12147.

Under the regulations promulgated pursuant to the ADA, the following provisions have relevance here:

Curb ramps.

(1) Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway.

(2) Newly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections to streets, roads, or highways.

28 C.F.R. § 35.151(e).  Precise engineering specifications for curb ramps are set forth in the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities ("ADAAG"), 28 C.F.R. Part 36, Appendix A, compliance with which is deemed to satisfy the requirements of § 35.151 and the ADA.  *See id.* at § 35.151(c).  Alternatively, the

---

[5] There is no dispute for present purposes that the individual Plaintiffs are "qualified individuals with a disability" and that VFI serves and represents the interests of such individuals, nor is there any dispute that Defendants are "public entities."

public entity may depart from the ADAAG standards "when it is clearly evident that equivalent access" is provided.  *Id.*

Plaintiffs' second count arises under § 504 of the Rehabilitation Act which, for present purposes, is "materially identical" to the ADA.  *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 123 (7th Cir. 1997).  *See also McDonald v. Commonwealth of Pennsylvania, Department of Public Welfare, Polk Center*, 62 F.3d 92, 94-95 (3d Cir. 1995).  Thus, both Title II of the ADA and § 504 of the Rehabilitation Act have been construed to protect access for disabled persons to public services and the protections afforded by the two statutes are generally interpreted to be coextensive.  *See, e.g., Koslow v. Commonwealth of Pennsylvania,* 301 F.3d 161, 166 n.3 (3d Cir. 2002) (Section 504 of the Rehabilitation Act and Title II of the ADA offer similar protections for persons with disabilities; Title II applies to all state and municipal governments, while § 504 applies to those agencies or departments receiving federal funds); *Doe v. County of Centre, Pennsylvania*, 242 F.3d 437, 446 (3d Cir. 2001) (protections found in the ADA and in the Rehabilitation Act are interpreted similarly; ADA is construed as granting at least as much protection as that which is provided by the regulations implementing the Rehabilitation Act).

For purposes of the instant motions it is not disputed that, since January 26, 1992 – the effective date of the ADA – a number of curb ramps have been installed along state roads within or around the City of Meadville, certain of which do not comply with the aforecited federal mandates.  A question thus arises as to whether claims based on these noncompliant curb ramps are now time-barred where the curb ramp in question was not subject to a "triggering event" (meaning an act of new construction or alteration) within the applicable limitations period.

We begin by noting that neither the ADA nor the Rehabilitation Act contains a statute of limitations.  Both sides here agree, as does this Court, that the most appropriate and analogous limitations period is the two-year period applicable to personal injury actions brought under Pennsylvania law, 42 PA. C.S.A.  §5524.  *See*

6

*Foster v. Morris*, No. 05-4765, 208 Fed. Appx. 174, 2006 WL 3712949 *2 (3d Cir. Dec. 18, 2006) ("Because the ADA does not contain a statute of limitations, it too borrows the state limitations period for personal injury actions") (citation omitted).  *See also Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority*, No. 03-cv-1577, 2006 WL 3392733 at *11 (E.D. Pa. Nov. 17, 2006); *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004); *Barclay v. Amtrak*, 343 F. Supp. 2d 429, 433 (E.D. Pa. 2004); *Howard v. Mendez*, 304 F. Supp. 2d 632, 635 (M.D. Pa. 2004); Saylor *v. Ridge*, 989 F. Supp. 680, 686 (E.D. Pa. 1998).  As this action was commenced against PennDOT on March 28, 2006, it is PennDOT's position that Plaintiffs can seek relief only as to curb ramps constructed or altered after March 28, 2004.  Similarly, the City of Meadville contends that Plaintiffs can seek relief only as to curb ramps installed within two years of the commencement of litigation.

Plaintiffs acknowledge the general applicability of a 2-year statute of limitations; however, they maintain that they can still pursue claims arising prior to that period under the "continuing violation" doctrine, which is an "equitable exception to the timely filing requirement."  *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001).  Under the continuing violation doctrine, as applied by the Third Circuit Court of Appeals, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  *Id.* (quoting *Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).  The doctrine will only apply, however, where the plaintiff can establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts."  *Id.* (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)).  This inquiry involves consideration of at least three factors, *to wit*:  (1) subject matter – whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) the degree of permanence – whether the act had a degree of permanence such that it should have triggered the plaintiff's

awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Id.* (citing *West*, 45 F.3d at 755 n.9). This third factor is the most important and requires consideration of the policy rationale behind the statute of limitation; "[t]hat is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Id.* at 292, 295.

As Plaintiffs point out, this Court applied the continuing violations doctrine in prior litigation against the City of Erie in which the plaintiffs alleged that the City had violated Title II of the ADA by failing to construct curb ramps along city streets. *See Barrier Busters v. City of Erie*, *Pennsylvania,* 1:02cv203 (W.D. Pa. Aug. 8, 2003) (Doc. # 28). The *Barrier Busters* case involved allegations, like those raised here, that, since 1992, the defendant had been engaged in resurfacing city streets and repairing or constructing city sidewalks but, in so doing, had either failed to install curb ramps or had constructed them improperly. The City of Erie had defended the claims partly on statute of limitations grounds, arguing that the plaintiffs' request for relief should be barred insofar as it involved non-compliant curb ramps predating the 2-year statute of limitations period. The plaintiffs countered that the City's violations constituted an over-arching pattern or practice of discrimination which was continuing through to the present time and that their claims relative to older curb cuts should therefore be considered timely.

With respect to the plaintiffs' claims for injunctive relief, this Court adopted the Magistrate Judge's Report and Recommendation and denied the City's motion for summary judgment, holding that the class could pursue its claims even with respect to noncompliant ramps constructed more than two years prior to the commencement of litigation under the "continuing violation theory." In arriving at that recommendation, the Magistrate Judge first determined that "the [City's] continuing failure to install ADA-compliant curbs is the same violation repeated numerous times throughout the entire time period, thus easily satisfying both the subject matter and the frequency prongs of the *Cowell* test." (Magistrate Judge's Report and Recommendation, dated March 26,

8

2003 [Doc. # 19] at p. 6; *see also* Order adopting Report and Recommendation, dated

Aug. 8, 2003 [Doc. # 28].)

Although analysis of the third *Cowell* prong – the "degree of permanence" – was

less obvious and straight-forward, the Magistrate Judge determined that this prong also

cut in favor of allowing plaintiffs to pursue their injunctive claims. Noting that the "degree

of permanence" prong requires consideration of the policy rationale behind the statute of

limitations, the Magistrate Judge observed that the statute of limitations is "intended to

put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on

their rights." (Report and Recommendation at p. 6.) She reasoned that

> it would be difficult [for a plaintiff] to know the date on which a city street
> has been altered and to bring an action for non-compliance under the ADA
> within the two year period. Holding that each incident of repaving triggers
> its own statute of limitations frustrates the purpose of the ADA and
> potentially allows the City to escape years of liability for alleged non-
> compliance with a statute designed to correct a long history of
> discrimination by public entities.

(Report and Recommendation at p. 6.) The Magistrate Judge therefore concluded, and

this Court agreed, that the *Cowell* factors collectively supported application of the

"continuing violation theory" relative to the class's equitable claims.[6]

Here, Defendants' primary argument in support of a summary judgment is that the

continuing violations doctrine cannot be applied in this case in light of the Supreme

Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

That case involved a former employee of Amtrak, Abner Morgan, Jr., who sued Amtrak

under Title VII for alleged acts of racial discrimination and retaliation. In Morgan's case,

the statute required him to file an employment discrimination charge with the Equal

---

[6] While the Magistrate Judge found that the "degree of permanence" prong weighed in favor of applying the "continuing violation" doctrine to the class's claims for *injunctive* relief, she found that the same considerations did not apply with respect to the individual plaintiffs' claims for monetary damages. This Court declined to adopt that portion of the Report and Recommendation in light of the fact that the plaintiffs ultimately withdrew their damages claims, thus rendering the issue moot. Here, we are not presented with any prayer for monetary relief.

Employment Opportunity Commission within 300 days after an "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Morgan had filed an administrative charge with the EEOC and had cross-filed with the California Department of Fair Employment and Housing on February 27, 1995, alleging that during his tenure with Amtrak, he had been "consistently harassed and disciplined more harshly than other employees" because of his race. 536 U.S. at 105. Specifically, Morgan claimed that he had been wrongfully suspended and charged with insubordination, denied training, falsely accused of threatening a manager and, ultimately, terminated from his job. Certain of the discriminatory acts about which Morgan complained had occurred within the 300-day period prior to the filing of his administrative charge, while others had occurred more remotely. Amtrak defended, in part, on the argument that it was entitled to summary judgment with respect to all incidents occurring more than 300 days prior to the filing of Morgan's EEOC charge.

The Supreme Court held that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts (e.g., termination, failure to promote, denial of transfer, or refusal to hire) must file his charge within the appropriate time period established in § 2000e-5(e)(1) – either 300 or 180 days, as the case may be. *See* 536 U.S. at 122. Thus, because "[e]ach discrete discriminatory act start[ed] a new clock for filing charges alleging that act," 536 U.S. at 114, Morgan could not litigate any of the discrete acts of discrimination that were alleged to have occurred outside of the 300-day filing period.

With respect to Morgan's hostile work environment claim, however, the Court held that this cause of action would not be time barred "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." 536 U.S. at 122. The Court explained that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Consequently, so long as one act forming part of the claim occurs within the filing period, the entire time period of the alleged hostile environment may be considered for purposes

10

of establishing the employer's liability, regardless of the fact that some of the component acts may fall outside the statutory time period. *Id*.  As the Court noted, "[t]he statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability." *Id*. at 118.  Accordingly, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id*.

The Defendants read *Morgan* for the proposition that discrete discriminatory acts, such as the "construction" or "alteration" of a non-ADA-compliant curb site, are not actionable if time-barred, even though they may be related or linked to similar, more recent acts occurring within the limitations period.  Moreover, Defendants interpret post-*Morgan* case law as giving an ever-widening affect to the *Morgan* Court's holding and, in essence, limiting application of the "continuing violation" doctrine almost exclusively to hostile work environment claims.  In other words, under Defendants' theory, the construction or alteration of any given curb site is an individual and discrete act which triggers the commencement of the running of the statute of limitations; Plaintiffs' failure to timely challenge any acts of new construction or alterations that were fully completed more than 2 years prior to the commencement of litigation therefore renders such claims time-barred.  Defendants challenge the Court's contrary ruling in *Barrier Busters, supra*, on the ground that the Court's analysis therein failed to apply or even consider the Supreme Court's holding in *Morgan*.

Plaintiffs, not surprisingly, insist that the Defendants have misread *Morgan* as having a broader effect than it was intended to have.  Plaintiffs contend that *Morgan* has no application in the instant case, which involves an alleged "over-arching pattern or practice" of discrimination.  Plaintiffs further maintain that there has been no material change in the law concerning the "continuing violations" doctrine since our prior ruling in *Barrier Busters*.

The posturing of this debate thus requires us to revisit the analysis we adopted in *Barrier Busters* and to consider whether, and to what extent, *Morgan* effectuated a

11

change in Third Circuit law relative to the "continuing violations" doctrine.  Having outlined the essence of both Plaintiffs' and Defendants' positions on the matter, we conclude that both sides are partly correct:  that is, we agree with the Plaintiffs that *Morgan* did not fundamentally change the law in this circuit as it pertains to the "continuing violations" doctrine; however, upon revisiting the reasoning of *Barrier Busters*, we are inclined to agree with Defendants that the doctrine does not apply to these facts.  That having been said, we conclude, based on other reasons explained more fully below, that Defendants' motion for summary judgment lacks merit and must be denied.

We first address the parties' dispute as to what effect, if any, *Morgan* has on the law of this circuit as it pertains to the "continuing violation" doctrine.  As noted above, we conclude that the legal standards for determining whether a defendant's alleged misconduct constitutes a continuing violation has not changed in this jurisdiction.  Even prior to the Supreme Court's decision in *Morgan*, the focus of "continuing violation" jurisprudence in this circuit was on whether the defendant's challenged conduct constituted something more than "isolated and sporadic acts" of intentional discrimination.  *Cowell*, 263 F.3d at 286.  *See also West v. Philadelphia Electric Co.*, 45 F.3d 744, 755 (3d Cir. 1995) ("The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.").  In making this determination, our circuit court of appeals has utilized the three-factor approach adopted in *Cowell* and discussed, *supra*, which derives from the Fifth Circuit Court of Appeals' decisions in *Barry v. Bd. of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983) and *Waltman v. International Paper Co.*, 875 F.2d 468, 474-75 (5th Cir. 1989).  *See Cowell*, 263 F.3d at 292; *West*, 45 F.3d at 755 n. 9.  That approach has continued to be used by our circuit court of appeals in cases post-dating *Morgan*.  *See, e.g., Foster v. Morris,* No. 05-4765, 208 Fed. Appx. 174, 178, 2006 WL 3712949 at **3 (3d Cir. Dec. 18, 2006); *Thorpe v. Grillo*, No. 00-3171, 80 Fed. Appx. 215, 220, 2003 WL 22477890 at **4 (3d Cir. Oct. 31, 2003); *Shenkan v. Potter*, No. 02-

12

3508, 71 Fed. Appx. 893, 895, 2003 WL 21649506 at *2 (3d Cir. June 13, 2003); *Lipschultz v. Logan Assistance Corp.*, Nos. 01-1564, 01-1565, 50 Fed. Appx. 528, 530, 2002 WL 31357636 at **2 (3d Cir. Oct. 21, 2002).  In fact, a panel of the Third Circuit Court of Appeals has directly stated, albeit in a non-precedential opinion, that *Morgan* did not abrogate prior Third Circuit case law relative to continuing violations.  *See Shenkan v. Potter*, *supra*, 71 Fed. Appx. at 895 n. 3, 2003 WL 21649506 at **2 n.3 ("Shenkan contends that our continuing violations case law was 'abrogated' by the Supreme Court's ruling in *Morgan*, but nothing in *Morgan* supports that remarkable assertion.").  *See also Riddell v. Slippery Rock University*, No. Civ. A. 04-108, 2006 WL 2773414 at *12 n.6 (W.D. Pa. Sept. 25, 2006) (noting that *Morgan* affirmed and did not disturb the main principle underlying the Third Circuit's treatment of the "continuing violations" doctrine; the "key issue" in determining whether the doctrine should be applied in a Title VII case is "whether the acts at issue are isolated, intermittent acts or are instead part of a persistent, on-going pattern of discrimination.").

Having concluded that *Morgan* did not materially alter the legal landscape of the "continuing violation" doctrine in this circuit, we nevertheless conclude that the facts at bar do not warrant application of the doctrine in this case.  We begin by observing that the doctrine is construed in this circuit as a "narrow exception" to the timely filing requirement.  *See MFS, Inc. v. Township of South Annville*, Civil Action No. 1:05-CV-1371, 2006 WL 3254535 at *3 (M.D. Pa. Nov. 9, 2006).  Consequently, while there are numerous cases in this circuit wherein the "continuing violation" doctrine has been raised or discussed, there are far fewer cases in which our court of appeals has found the doctrine to be applicable.  *See, e.g.*, *West,* 45 F.3d at 755 (hostile work environment claim); *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1296 (3d Cir. 1991) (alleged breach of union's duty of fair representation under the National Labor Relations Act); *Centifanti v. Nix*, 865 F.2d 1422, 1432-33 (3d Cir. 1989) (§ 1983 procedural due process claim); *Bronze Shields, Inc. v. New Jersey Dept. of Civil Serv.*, 667 F.2d 1074, 1081 (3d Cir. 1981) (employment discrimination claim);

13

*Jewett v. Int'l Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981) (employment discrimination claim).

Of the three factors discussed in *Cowell* for determining whether the doctrine should apply, the most important is the third factor – degree of permanence. *See Cowell*, 263 F.3d at 292. To review, this factor inquires whether the alleged wrongful act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Id*.

The inquiry seems to be directed at distinguishing between discreet, actionable acts of misconduct and persistent, on-going ones. It recognizes that there may be situations where the illegality of a defendant's conduct becomes apparent only over a period of time and, in such cases, an otherwise diligent plaintiff should not be penalized for his or her delay in filing suit. *See Foster v. Morris*, Fed. Appx. at 177-78, 2006 WL 3712949 at *2 ("The continuing violations doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time."). On the other hand, where the conduct consists of a discreet and actionable injury of which a reasonable plaintiff would have been aware, the doctrine has no application. *See Seawright v. Greenberg,* No. 05-5295, 2007 WL 1170704 at *3 (3d Cir. April 20, 2007) (continuing violations theory does not apply in cases where the plaintiff is aware of the injury at the time it occurred) (citation omitted); *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n. 6 (3d Cir. 2003) (same) (citing *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)). Thus, "causes of action that can be brought individually expire with the applicable statute of limitations period." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006).

Though application of the "continuing violations" doctrine may not be strictly limited (as Defendants suggest) to employment discrimination cases involving hostile work environment claims, *see Cowell*, 263 F.3d at 292 (recognizing applications of the

14

doctrine in other contexts), such claims present the quintessential scenario where

application of the doctrine is perhaps most often appropriate.  In fact, the Third Circuit

has recognized that "[t]here is a natural affinity between the two theories," and "[a]

number of courts... have remarked upon the correlation between the two."  *West*, 45

F.3d at 755 (citations omitted).  As the Supreme Court explained in *Morgan*:

> Hostile environment claims are different in kind from discrete acts.  Their
> very nature involves repeated conduct. ... The "unlawful employment
> practice" therefore cannot be said to occur on any particular day.  It occurs
> over a series of days or perhaps years and, in direct contrast to discrete
> acts, a single act of harassment may not be actionable on its own.  *See
> Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed.
> 2d 295 (1993) ("As we pointed out in *Meritor [Savings Bank, FSB v.
> Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986),] 'mere
> utterance of an ... epithet which engenders offensive feelings in a[n]
> employee,' *ibid.* (internal quotation marks omitted), does not sufficiently
> affect the conditions of employment to implicate Title VII").  Such claims
> are based on the cumulative effect of individual acts.

536 U.S. at 115 (alterations and parentheticals in the original).

Accordingly, our circuit court of appeals has held in one pre-*Morgan* Title VII case

that the continuing violation doctrine would apply to an employee's sex discrimination

claim premised upon a hostile work environment theory but would not apply to her

discrimination claims premised upon the employer's failure to promote and train her.  In

*Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3d Cir. 1997), the court ruled that the

plaintiff could litigate her hostile work environment claim, despite the fact that the claim

had not been included in her previous EEOC complaint and that some of the evidence in

support of her claim predated the limitations period.  The court concluded that the

continuing violations doctrine applied to the plaintiff's hostile work environment claim

because, among other things, there was evidence suggesting that the acts of

harassment had intensified after the plaintiff filed her EEOC charge, and she did not

realize the pervasiveness or severity of the misconduct early on.  113 F.3d at 482-83.  In

reaching its holding, the Court of Appeals recognized the "natural affinity" between the

continuing violations theory and hostile work environment claims, which "results from

acts of ... harassment which are pervasive and continue over time, whereas isolated or

15

single incidents of harassment are insufficient to constitute a hostile environment."  113

F.3d at 482 (quoting *West*, 45 F.3d at 755) (ellipsis in the original).

While the court in *Rush* ruled that the plaintiff's hostile work environment claim

were viable under the continuing violations theory, it ruled that her failure to promote and

train claim was distinct and addressed "discrete instances of alleged discrimination" not

susceptible to a continuing violation analysis.  113 F.3d at 483-84.  The court explained

that

> Scott's promotion of Knoll and hiring of Carpenter were independent
> events that put Rush on notice to file a charge of discrimination.  Rush
> knew from the settlement agreement that she was to be considered for the
> next available Lab tech II position.  If she believed Scott was not
> considering her for available positions as promised, she should have
> reacted at that time.  Waiting to see what would happen next was
> pointless; the harm, if any, already was inflicted.

*Id*. at 484.

Thus, the "degree of permanence" prong under *Cowell* is concerned with

determining whether the defendant's acts were sufficient to put a reasonable person on

notice that an actionable injury has occurred.  This involves consideration of the policy

rationale behind the statute of limitations – i.e., the doctrine "should not provide a means

for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their

claims."  *Cowell*, 263 F.3d at 295.  In short, "if prior events should have alerted a

reasonable person to act at that time the continuing violation theory will not overcome

the relevant statute of limitations."  *King v. Township of East Lampeter*, 17 F. Supp. 2d

394, 416 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999) (TABLE, NO. 98-1806).

*See also MFS, Inc. v. Twp. of South Annville*, 2006 WL 3254535 at *4 (quoting *King*).

In a case more factually analogous to the case at bar, the Third Circuit Court of

Appeals recently held that the continuing violations doctrine did not apply to toll a

prisoner's claim under the ADA relative to non-compliant conditions in a county prison.

In *Foster v. Morris*, *supra*, the plaintiff was a partial paraplegic who sued over conditions

at a county prison which lacked handicap accessible facilities, including a wheelchair

accessible toilet and showers.  The plaintiff had been temporarily housed at the prison

for various lengths of time over a period of years.  As a result of the prison's conditions, the plaintiff had to use his sink to bathe himself and had difficulty using the toilets.  On one occasion, he had fallen in the shower and injured his back; on other occasions, he had soiled himself and/or developed rashes and pressure sores.  In reviewing the district court's order granting summary judgment on statute of limitations grounds, the court of appeals considered, and rejected, the plaintiff's argument that the continuing violations doctrine tolled his ADA and related claims.  Focusing on the third prong (i.e., the "most important" one) of *Cowell*'s 3-factor test, the court noted that the "violations at issue in Foster's suit – e.g. lack of grab bars on his toilet and wheelchair accessible shower – had a degree of permanence such that they put Foster on notice of his duty to assert his rights each time he was transferred to Franklin."  208 Fed. Appx. at 178; 2006 WL 3712949 at **3.  Accordingly, the court held that the plaintiff could pursue his ADA and related claims only insofar as they pertained to violations occurring within the limitations period.  *Id*.

        Although the facts of *Foster* are not precisely on point with the facts at issue here, the court's interpretation of *Cowell*'s third prong is both instructive and applicable to this case.  Like the non-compliant conditions which existed at the prison in *Foster*, a noncompliant curb ramp is the type of condition which partakes of permanence and should trigger an awareness on the part of a qualified plaintiff who is denied access that he should assert his rights.  In addition, the consequences of a public entity's failure to install a proper curb cut continues irrespective of any continuing intent on the part of the public entity to discriminate.  Once a defective curb site is installed, the consequences for disabled persons encountering that site continue whether or not another defective curb cut is installed elsewhere.  Accordingly, while the first two *Cowell* factors (subject matter and frequency) support a finding that the continuing violation doctrine applies in this case, the third and most significant factor cuts against such a finding.

        In arriving at this conclusion, the Court acknowledges its prior ruling to the contrary in *Barrier Busters*.  As we previously discussed, the Magistrate Judge's Report

and Recommendation in that case suggested that the "degree of permanence" factor weighed in favor of applying the continuing violation doctrine because "it would be difficult [for a plaintiff] to know the date on which a city street has been altered and to bring an action for non-compliance under the ADA within the two year period." *Barrier Busters v. City of Erie, Pennsylvania*, No. 1:02cv203 (Magistrate Judge's Report and Recommendation [19] at p. 6.)  The Magistrate Judge further reasoned that, to hold that each incident of repaving triggers its own limitations period would "frustrate[] the purpose of the ADA and potentially allow[] the City to escape years of liability for alleged non-compliance with a statute designed to correct a long history of discrimination by public entities." *Id*.  While this Court adopted that aspect of the Report and Recommendation in *Barrier Busters*, on further reflection we find the reasoning unpersuasive and we therefore decline to employ it here.  That is because we conclude that the Magistrate Judge's reasoning was premised on an erroneous assumption – i.e., that, unless the "continuing violation" doctrine applies, the statute of limitations begins running as against all potential plaintiffs from the date that a particular curb site is "altered" or "constructed" within the meaning of the ADA.  As we explain in more detail below, the Defendants here likewise rely on that flawed premise, which we reject as contrary to both the applicable law and the remedial purposes underlying the ADA.  Accordingly, the Court declines to follow the ruling of *Barrier Busters* in this case.

Finally, we acknowledge Plaintiffs' argument that the continuing violations doctrine continues to have vitality in cases such as this where there are allegations of an "overarching discriminatory pattern and practice" on the part of the Defendants. Whatever the validity of this argument might be, the principle seems to find support largely from courts outside of this circuit, including the Sixth Circuit Court of Appeals, whose pronouncements do not govern our consideration of the issue.  For example, Prior to *Morgan*, the Sixth Circuit viewed continuing violations as falling into two categories of "narrowly limited exceptions" to the usual rule.  The first category, sometimes referred to as the "serial violations component" of the continuing violations

18

doctrine, "arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation; that is, where an employer continues presently to impose disparate work assignment or pay rates between similarly situated employee groups." *Deck v. City of Toledo,* 56 F. Supp. 2d 886, 893 (N.D. Ohio 1999) (quoting *E.E.O.C. v. Penton Industrial Pub. Co., Inc.*, 851 F.2d 835, 838 (6th Cir. 1988)).  "[T]his category requires a 'current' as well as 'continuing' violation:  at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period." *Id.* (citing *Bazemore v. Friday*, 478 U.S. 385, 394-95 (1986)). The second category involves cases where there is a continuing "over-arching policy of discrimination."  *Id*. (citing *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987)).

In *Sharpe v. Cureton*, 319 F.3d 259, 268-69 (6th Cir. 2003), the Sixth Circuit Court of Appeals held that *Morgan* overturned the prior circuit law addressing serial violations: "*i.e.*, plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period."  319 F.3d at 268. While the second category of continuing violations – involving a "longstanding and demonstrable policy of discrimination" – remains a viable theory in the Sixth Circuit, *id*., it requires the plaintiff to establish, by a preponderance of the evidence, that some form of intentional discrimination against the class of which plaintiff was a member was the [defendant's] standard operating procedure."  *Id*. at 269 (quoting *EEOC v. Penton Industrial Pub. Co.*, 851 F.2d at 838).  *But see Deck*, 56 F. Supp. 2d at 894-95 (city's failure to oversee contractors who installed noncompliant curb ramps could constitute continuing violation as an "over-arching policy of discrimination under the ADA, despite the lack of any specific intent to discriminate).  In any event, to the extent the Sixth Circuit would recognize the Defendants' alleged "over-arching policies of discrimination" as continuing violations, that principle is not controlling precedent in this circuit and we decline to follow it.  Instead, we must follow the clearly established principles governing

the applicability of the continuing violations doctrine in this circuit as set forth in *Cowell* and its progeny, which we have already discussed above.[7]

In sum, the foregoing discussion leads us to the following conclusions.  We agree with Plaintiffs that *Morgan* does not necessarily control the facts of this case and does not necessarily limit application of the continuing violation theory solely to hostile work environment claims.  Moreover, we find the Supreme Court's ruling in *Morgan* to be entirely consistent with, and affirmative of, the law of this circuit as it pertains to the continuing violations doctrine.  However, we also conclude, contrary to our prior ruling in *Barrier Busters*, that the continuing violation doctrine has no application to the type of misconduct alleged here.

Notwithstanding the latter conclusion, we find Defendants' theory as to the untimeliness of Plaintiffs' claims unpersuasive for other reasons.  First, Defendants' theory is premised upon a flawed assumption as to when the Plaintiffs' causes of action accrued.  Second, a defense premised upon the expiration of the statute of limitations is not conclusive in a case such as this which seeks only equitable relief.

(i)

Underlying Defendants' statute-of-limitations argument is their assumption that a discrimination claim under Title II of the ADA accrues with each act of newly constructing or altering a curb face.  Since 28 C.F.R. § 35.151(e) requires that "newly constructed or

---

[7] Plaintiffs also rely on the Supreme Court's decision in *Haven Realty Corporation v. Coleman*, 455 U.S. 363 (1982), wherein the Supreme Court applied the continuing violations doctrine to claims brought under the Fair Housing Act for alleged on-going acts of racial steering in the leasing of apartments.  In *Havens*, the Court concluded that, "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice."  455 U.S. at 380-81.  As this language suggests, the Supreme Court's ruling was narrowly tied to the Fair Housing Act, and the decision has not been relied upon in this circuit as giving broad effect to the continuing violations doctrine.

altered" streets, roads, highways, and walkways contain curb ramps, and since the failure to include such curb ramps is considered an act of discrimination for purposes of Title II, *see* 42 U.S.C. §§ 12132, 12146 and 12147, the Commonwealth Defendants conclude that the relevant "triggering" event for statute of limitations purposes is the act of new construction or alteration.  In support of this position they cite *Kinney v. Yerusalim*, 9 F.3d 1067 (3d Cir. 1993), wherein the Third Circuit Court of Appeals held that the resurfacing of a city street constitutes an "alteration" for purposes of § 35.151(e), and must therefore be accompanied by the installation of an appropriate curb cut.  *See* 9 F.3d at 1075.

While we agree with Defendants that it is acts of "new construction" and/or "alterations" which trigger a public entity's *duty* to install the requisite curb cuts and, while we further agree that the failure to install the required curb cuts constitutes *an act of discrimination* under Title II of the ADA, we conclude that Defendants' statute of limitations argument misses the mark.  The issue of when a defendant's duty arises (and/or when it is breached by perpetration of a discriminatory act) is distinct from the issue of when a plaintiff's injury arises or when his cause of action begins to accrue. Though we acknowledge the *Kinney* decision as binding precedent, it does not answer the question as to when a claim premised upon a defective curb cut begins to accrue. Notably, the Third Circuit decided *Kinney* approximately 20 months after the effective date of the ADA, so there was no question presented in that case as to the timeliness of the plaintiffs' claims or the date upon which those claims accrued.

For federal claims, the accrual date is governed by federal law, irrespective of the source of the statute of limitations.  *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005)). Where there is no controlling federal statute, accrual is determined by resort to the federal "discovery rule," which holds that the statute of limitations begins to run when the plaintiff discovers or should have discovered the injury that forms the basis of his claim. *Id.* (citing *Romero* at 222).

Recognizing this principle, the City of Meadville nevertheless argues that the Plaintiffs cannot benefit from the "discovery rule" because "both the acts of the installation of [non-compliant] curb ramps and the acts of repaving were completely open, visible and public." (Def. City of Meadville's Mem. [29] at p. 21.)  We do not agree with this interpretation of the discovery rule which, in essence, would mean that a plaintiff's cause of action premised upon the installation of a defective curb ramp automatically accrues on the very date of the installation.

For one, the Defendants' theory ignores the fact that a completed tort under Title II of the ADA requires more than merely an act of discrimination.  Section 202 of Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II, a plaintiff must establish the following elements:  (i) that he or she is a qualified individual with a disability; (ii) that he or she suffered some act of discrimination by the public entity (i.e., was either excluded from participation in some service, program or activity or was denied the benefits thereof); and (iii) that such discrimination was by reason of his or her disability.  *See Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997); *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996); *Darian v. University of Massachusetts Boston*, 980 F. Supp. 77, 84 (D. Mass. 1997); *Williams v. Wasserman*, 937 F. Supp. 524, 528 (D. Md. 1996); *Civic Ass'n of Deaf of New York City, Inc., v. Giuliani,* 915 F. Supp. 622, 634 (S.D.N.Y. 1996).[8]  Thus, a cause of action is not complete for purposes of Title II until a plaintiff – a qualified individual with a disability –

---

[8] The elements required to prove a claim under the Rehabilitation Act are, in material part, the same.  *See Rogers v.Department of Health and Environmental Control*, 985 F.Supp. 635, 638 (D.S.C. 1997), *order aff'd*, 174 F.3d 431 (4th Cir. 1999); *Darian v. University of Massachusetts Boston*, 980 F. Supp. 77, 84-85 (D. Mass. 1997); *Williams v. Wasserman*, 937 F. Supp. 524, 528 (D. Md. 1996); *Lincoln Cercpac v. Health and Hospitals* Corp., 920 F. Supp. 488, 497 (S.D.N.Y. 1996).

is denied access by virtue of a defective curb cut, irrespective of the date on which the curb was defectively installed.

Similarly, the Defendants' theory fails to acknowledge the jurisdictional prerequisite that a plaintiff have standing to litigate the case or controversy at hand. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). Standing consists of three components:

> (1) the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Town of Piscataway v. Duke Energy*, 488 F.3d 203, 208 (3d Cir. 2007) (citation omitted).

In the context of an ADA claim, the first prong ("injury in fact") is satisfied where the plaintiff is aware of discriminatory conditions and avoids a public accommodation because of that awareness. *See Access 4 All, Inc. v. Trump International Hotel and Tower Condominium*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006). *See also Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("[O]nce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury."). For purposes of obtaining injunctive relief, standing is satisfied where the plaintiff can demonstrate a "plausible intention or desire to return to the place [of the injury] but for the barriers to access." *Disabled in Action of Metropolitan New York v. Trump Int'l Hotel & Tower*, No. 01 CIV. 5518 (MBM), 2003 WL 1751785 at *7 (S.D.N.Y. April 2, 2003) (citing cases).

By the same token, a plaintiff cannot demonstrate standing where he lacks a concrete and specific intent to return to the non-compliant site. *See, e.g., Lamb v. Charlotte County*, 429 F. Supp. 2d 1302, 1309 (M.D. Fla. 2006) (plaintiff failed to

credibly or sincerely allege future injury, and therefore lacked standing to obtain injunctive relief against county that maintained non-ADA compliant public buildings where, among other things, plaintiff lived 75 miles from the site in question, had only infrequent contact with the site, had no connection to it and no family or friends located nearby, stated no immediate or concrete plan to return there, and had a litigious history); *Ross v. City of Gatlinburg, Tennessee*, 327 F. Supp. 2d 834, 842 (E.D. Tenn. 2003) (plaintiffs lacked standing where, despite alleging "difficulty" and "problems" with parking and navigating city streets, they failed to identify particular noncompliant sites and failed to specify how they had personally been excluded from participation in, or denied the benefits of, a municipal service, program or activity).  *See also Access 4 All, Inc.*, 458 F. Supp. 2d at 168 ("[T]he failure to allege an intention or desire to return to the place where a plaintiff encountered an ADA violation or merely alleging an intention to return 'some day' merits dismissal [of the complaint].")  This limitation makes good sense: "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury."  *Lamb*, 429 F. Supp. 2d at 1310 (emphasis in original) (citation omitted).

Thus, to obtain relief under Title II of the ADA, the Plaintiffs in the instant case must be able to demonstrate that they are being denied access to particular locations in and around the Cities of Meadville and Erie because of the absence of federally mandated curb ramps at specific sites within those jurisdictions.  As to any particular non-compliant curb site, however, it is conceivable that a particular qualified individual with a disability might not be able to demonstrate the requisite injury until some point in time, well beyond the two-year post-installation period, when previously unforeseen circumstances bring him or her into contact with that non-compliant site.  It is not far-fetched to imagine, for example, that a disabled individual's change in employment or residence might bring him into contact with non-compliant curb sites with which he previously had no contact nor any sincere need or desire to traverse.  Under the

Defendants' theory, such a plaintiff, having only recently acquired standing to challenge the violation, would be forever barred from doing so if the curb site had been constructed or altered more than two years previously.  Similarly, a disabled person who had only just recently relocated to Erie or Meadville from another state would be forever barred – through no fault of his own – from challenging non-compliant curb sites that had been defectively constructed or altered more than two years prior.

Furthermore, the Defendants' implied suggestion that prospective plaintiffs should preemptively investigate and prosecute defective curb-cuts is impracticable and would place an unfair burden on disabled persons – individuals for whom, as the ADA recognizes, the very act of getting around is often difficult.  As the Third Circuit observed in *Kinney*,

> [t]he lack of curb cuts is a primary obstacle to the smooth integration of those with disabilities into the commerce of daily life.  Without curb cuts, people with ambulatory disabilities simply cannot navigate the city; activities that are commonplace to those who are fully ambulatory become frustrating and dangerous endeavors.  At present, people using wheelchairs must often make the Hobson's choice between travelling in the streets – with cars and buses and trucks and bicycles – and travelling over uncut curbs which, even when possible, may result in the wheelchair becoming stuck or overturning, with injury to both passenger and chair.

9 F.3d at 1069.  Quite obviously, it is these difficulties which the ADA seeks to redress by requiring curb cuts in the first place.  Nonetheless, Defendants would have us place an affirmative burden on disabled persons such as the Plaintiffs to navigate and seek out defective curb cuts far and wide in order to file suit within two years of their installation.  Such a result strikes this Court as unduly burdensome and contrary to the remedial purposes of the statute.

For all of these reasons, we reject Defendants' theory that the Plaintiffs' cause of action under Title II of the ADA accrued on the date that the defective curb sites in question were actually constructed or altered.  We decline to read into the ADA a *per se* rule that charges all prospective Title II plaintiffs with constructive knowledge of the defective curb site as of the date the site is constructed or altered.  Rather, under the

federal "discovery rule," a cause of action as to any particular plaintiff accrues when the plaintiff knows or should know of the injury which forms the basis of his Title II claim. *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d at 520.  In the context of this case, this means that, as to any given Plaintiff, his or her cause of action under Title II accrued when the Plaintiff discovered or should have discovered that a particular curb face denied him or her proper access in violation of the ADA.  As the foregoing suggests, the date on which a cause of action may have accrued is unique as to any particular plaintiff and, indeed, as to any particular curb cut.  In fact, in some situations, the accrual date might conceivably *predate* the completion of the defective curb ramp's "construction" or "alteration," depending on the circumstances of the case.  *See, e.g., Disabled in Action of Pennsylvania*, *supra* at *14 (plaintiff's cause of action under Title II of the ADA relative to public subway station, which lacked an elevator in alleged violation of the ADA, accrued no later than the date on which plaintiff had been informed that the defendant intended to proceed with planned construction at the public subway station and that the defendant would not be installing an elevator at that site).  Suffice to say that the precise accrual dates at issue in this case cannot be definitively determined on the limited record before us.

For present purposes, however, the limited state of the record redounds to the Plaintiffs' benefit.  Because expiration of the statute of limitations is an affirmative defense, the Defendants bear the ultimate burden of proof on the matter. *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003).  Accordingly, in moving for summary judgment on the basis of that defense, Defendants bear the initial burden of producing evidence that would entitle them to a directed verdict if the evidence went uncontroverted at trial.  *See C.A.R. Transportation Brokerage Co., Inc.*, 213 F.3d at 480; *Paramount Aviation Corp.*, 178 F.3d at 146.  Defendants thus bear the initial burden of proving that there is no genuine issue of material fact concerning the date on which the statute of limitations began to run in this case.  *See Ebbert*, 319 F.3d at 108 (defendant's burden of proving expiration of the statute of limitations "clearly requires

proof of the lawful start date for the limitations period," and defendant's failure to meet this burden rendered summary judgment inappropriate); *Richard B. Roush, Inc. Profit Sharing Plan v. The New England Mutual Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002) (to prevail on its summary judgment motion on statute of limitations grounds, defendant that was sued under ERISA had to prove that plaintiff had actual knowledge of the alleged breach of fiduciary duty more than three years before his action was filed). *Accord Edwards v. Princes Cruise Lines, Ltd.*, 240 F.R.D. 546 (N.D. Cal. 2006) (defendant cruise line, having been sued by passenger for alleged ADA violations and having moved for summary judgment on statute of limitations grounds, met its initial summary judgment burden of proving that plaintiff failed to comply with the contractual six month statute of limitations period by introducing evidence that the plaintiff had waited nearly two years to file suit).

Here, Defendants have not carried their initial burden under Fed. R. Civ. P. 56 of demonstrating the absence of a genuine fact relative to the date on which the various Plaintiffs' claims accrued in this case. Accordingly, their motion for summary judgment must be denied.

(ii.)

We further conclude that Defendants' statute of limitations defense is somewhat misplaced in light of the fact that Plaintiffs are seeking only equitable relief here. "Traditionally and for good reasons, statutes of limitations are not controlling measures of equitable relief," *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946), but they are relevant for purposes of determining whether a defendant can assert the equitable defense of laches. *Id*.

The affirmative defense of laches consists of two elements: (1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay. *Santana Prod., Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138 (3d Cir. 2005) (Lanham Act claim). In this circuit courts have held that, once the statute of limitations has expired, the defendant "enjoys the benefit of a presumption of inexcusable delay

27

and prejudice," *id*. at 138 (quoting *EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984)), and the plaintiff acquires the burden of disproving both elements. *Id*. at 139-40 (citing additional cases). Conversely, some courts have found that laches is not a viable defense to a claim that is filed within the applicable limitations period. *See Marchionni v. Southeastern Pennsylvania Transportation Authority,* No. Civ. A. 98-6491, 2000 WL 124564 at *2 (E.D. Pa. Feb. 2, 2000) (§ 1983 claim) (citing cases).

Here, however, Defendants have not asserted the affirmative defense of laches and, even if they had, this defense would not provide grounds for an award of summary judgment. Because the record here does not support a finding that the relevant statute of limitations has expired, there can be no presumption of inexcusable delay by the Plaintiffs and prejudice to the Defendants. *See Highland Tank & Mfg. Co. v. PS International, Inc.*, 393 F. Supp. 2d 348, 357 (W.D. Pa. 2005) (where review of the complaint under Fed. R. Civ. P. 12(b)(6) did not demonstrate that statute of limitations barred plaintiff's claim, court would not presume inexcusable delay and prejudice to defendant).

## IV.  CONCLUSION

Based upon the foregoing reasons, the Defendants' motions for summary judgment will be denied.[9]  An appropriate order follows.

---

[9] The Court acknowledges the parties' submissions concerning the Supreme Court's recent decision in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, — U.S. —, 127 S. Ct. 2162 (2007).  However, that decision does not affect our disposition of the instant motions in light of our analysis as set forth above.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VOICES FOR INDEPENDENCE (VFI), et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 06-78 Erie |
| ) | |
| v. ) | |
| ) | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, et al., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

AND NOW, *to wit* this 28th day of September, 2007, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion [25] for summary Judgment filed by Defendants the Commonwealth of Pennsylvania Department of Transportation and Allen D. Biehler and the Motion [27] for Partial Summary Judgment filed by the City of Meadville, Pennsylvania are DENIED.

/s    Sean J. McLaughlin
Sean J. McLaughlin
United States District Judge

cm:    All counsel of record.

29