IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VOICES FOR INDEPENDENCE, (VFI), ) <br> on behalf of themselves and all others ) <br> similarly situated ) <br>                 Plaintiffs, ) <br>      v. ) <br> ) <br> COMMONWEALTH OF PENNSYLVANIA ) <br> DEPARTMENT OF TRANSPORTATION; ) <br> ALLEN D. BIEHLER, P.E., in his official ) <br> capacity as Secretary of Transportation of ) <br> the Commonwealth of Pennsylvania ) <br>                 Defendants. ) | Civil Action No.:  06-78 Erie |

**PLAINTIFFS' MOTION TO ENFORCE
SETTLEMENT AGREEMENT WITH PENNDOT**

       1. This is a class action lawsuit against the Commonwealth of Pennsylvania Department of Transportation ("PennDOT"), the City of Erie, Pennsylvania and the City of Meadville, Pennsylvania alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq. ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. §§701, et seq., arising from PennDOT's failure to install curb ramps compliant with the applicable federal law and regulatory provisions.

       2. This motion seeks to compel PennDOT to abide by and honor settlement agreements that have been entered and approved by the court with respect to the construction specifications of ADA compliant curb ramps.

3. Specifically, PennDOT has breached the Settlement Agreements in three ways. One, PennDOT omitted installing approximately 1,000 curb ramps (hereinafter the "omitted curb ramps") when it resurfaced several hundred intersections throughout Erie and Meadville. Two, PennDOT has failed to file with the Court a detailed listing of the exact number and exact location of each of the omitted curb ramps. And three, PennDOT now is refusing to comply with the governing specifications that are included in the Settlement Agreements—specifically for curb ramp cross slope.

II.     SETTLEMENT AGREEMENTS

4. The Plaintiffs and PennDOT have entered into a series of four (4) settlement agreements to resolve in a piecemeal fashion various disputes regarding PennDOT's violations of the ADA. Under the Settlement Agreements, PennDOT has two obligations that are relevant to this motion. One, whenever PennDOT repaves a state route, it must install ADA compliant curb ramps at all intersections to permit people to cross that state route. Two, these curb ramps must be constructed according to the specifications found within the federal regulations known as ADA Accessibility Guidelines ("ADAAG 2004" and subsequently "ADAAG 2010").

5. The first Settlement Agreement was filed December 22, 2006 and it resolved the dispute over PennDOT's obligations regarding ramp installation and remediation relating to all future road resurfacing work in the City of Meadville. In relevant part, the Agreement states:

> PennDOT shall insure in the year 2007 and thereafter [during the effective term of this settlement agreement] that whenever PennDOT alters any PennDOT state highways or portions of state highways that are adjacent to sidewalks located within the City of Meadville, PennDOT agrees to install curb ramps that cross state highways at crosswalks on such altered or resurfaced state highways.  **Each such project shall comply with all Americans with Disability Act requirements, including 28 C.F.R. §35.151(b), (c), (e)(1) and (e)(2) and 28 C.F.R. Part 36, App. A, the ADAAG.**

*Settlement Agreement,* ¶*2 [Doc. 22]* (emphasis added).  <u>See</u>, *Order granting motion to enter settlement agreement, Dec. 22, 2006 [Doc. 23]*.

6.  The Second Settlement agreement was filed April 19, 2007 and it similarly resolved the dispute over PennDOT's obligations regarding ramp installation and remediation relating to all future road resurfacing work in the City of Erie.  In relevant part, the Agreement states:

> PennDOT shall insure in the year 2007 and thereafter [during the effective term of this settlement agreement] that whenever PennDOT alters any PennDOT state highways or portions of state highways that are adjacent to sidewalks located within the City of Erie, that curb ramps are installed at pedestrian crossings that cross state highways on such altered or resurfaced state highways.  **Each such project shall comply with all Americans with Disability Act requirements, including 28**

3.

>   C.F.R. §35.151(b), (c), (e)(1) and (e)(2) and 28
>   C.F.R. Part 36, App. A, the ADAAG.

*Settlement Agreement City of Erie and PennDOT, ¶2(a)* [*Doc. 32*] (emphasis added).  <u>See</u>*, Order approving settlement agreement, April 19, 2007 [Doc. 33]*

   7.  The Fourth Settlement Agreement was filed January 30, 2012[1] and it set forth a process to resolve the dispute over PennDOT's failure to install the approximately 1,000 omitted curb ramps.  In relevant part, this Agreement states:

>   C.  Installing ramps omitted during work performed since 2007
>
>   (1)  In a written report, PennDOT shall identify all State street, road and highway intersections newly constructed or altered by PennDOT in the Cities of Erie and Meadville during the years 2007 through 2010, where curb ramps were not installed at each such intersection.  The report shall specify at those intersections each location still containing curbs or other barriers to entry from a street level pedestrian walkway.  PennDOT shall file with the Court and Plaintiffs' Counsel a report comprehensively listing each such location no later than thirty days from today.

*Document 56, at Section II(C)(1).*

   On March 2, 2012, the thirty-day deadline for the detailed report expired, but PennDOT failed to file with the Court the mandated written report.  In February, 2012, PennDOT

---

[1] A third Agreement was filed March 4, 2009 [*Doc. 51*], and it dealt only with certain reporting requirements.  Its provisions are not relevant to the issues raised in this motion.

4.

did provide a listing that it described as an incomplete and unverified work-in-progress. However, PennDOT has failed to produce the final version of the report required by the Settlement Agreement.

8. Consistent with the earlier Settlement Orders, the Fourth Settlement Agreement specifically set forth the design specifications for all curb ramps.

> Beginning January 1, 2011 and thereafter, PennDOT shall insure that within the Cities of Erie and Meadville newly constructed or altered state streets, roads and highways shall contain curb ramps crossing the state streets, roads and highways at all intersections containing curbs or other barriers to entry from a street level pedestrian walkway, in order to provide access for those intersections to the walkways. **Each such project shall comply with all American with Disability Act requirements, including 28 C.F.R. §35.151(b), (c), (e)(1) and (e)(2) and 28 C.F.R. Part 36, App. A, the ADAAG.**

*Fourth Settlement Agreement between Plaintiffs and Defendant, Commonwealth of Pennsylvania Department of Transportation, ¶2(b)(1) [Doc. 56] (emphasis added).  See Order approving settlement agreement, May 11, 2012 [Doc. 58].*

9. This Agreement also recognized that the ADAAG 2004 had recently undergone some changes that were to be effective March 15, 2012.  In this regard, the Agreement states:

5.

> On September 15, 2010, the U.S. D.O.J. formally adopted revised ADA standards, known as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards").  Thus, beginning March 15, 2012, the effective date of the regulations and the 2010 Standards, the 2010 Standards now establish the standard PennDOT must comply with during future construction or alteration of state streets, roads and highways located in the Cities of Erie and Meadville.

10.  Thus, the two issues are framed.  One, by failing to file with the Court the required detailed written report of the omitted curb ramps, PennDOT is delaying the process for installing the 1,000 curb ramps it omitted.  Two, PennDOT has notified Plaintiffs that when it does install the omitted curb ramps, PennDOT will ignore the ADAAG.  Instead it will build ramps pursuant to its own, very lenient policy that will produce inaccessible cross slopes.

IV.  PENNDOT'S VIOLATIONS OF THE SETTLEMENT AGREEMENTS

    A.  PennDOT now refuses to comply with ADAAG

11.  Despite the fact that PennDOT has already built 1,023 curb ramps according to the ADAAG, and that all of the Settlement Agreements with PennDOT require that PennDOT construct ramps in compliance with the ADAAG 2004 and later, the ADAAG 2010, PennDOT has now informed the Plaintiffs that it will no longer abide by these Settlement Agreements and that it will no longer follow either the ADAAG 2004 or the ADAAG 2010.

12. Specifically, PennDOT now refuses to abide by the ADAAG 2010 restriction that the cross slope of a curb ramp can be no greater than 1:48 (2.07% slope). Instead, PennDOT will now follow its own, much more lenient, policy that would permit a curb ramp's cross slope to have the same grade as the profile of the adjoining road even if that creates a cross slope greatly in excess of 2%. *See Letter of Scott A. Bradley, Esquire, Senior Deputy Attorney General dated March 15, 2012, a copy of which is attached hereto as Exhibit 1.*

13. A critical physical characteristic of a curb ramp that is subject to strict ADAAG specification is the grade of its slopes. The slope that is at issue here is the cross slope. This refers to the grade of the ramp surface that runs perpendicular to the pedestrian path of travel over the ramp. This is contrasted with the running slope, which is the ramp's grade running parallel with the path of travel. Both the grades of the cross slope and the running slope are strictly limited because, as each gets steeper, it presents significant safety issues for people in wheelchairs.

14. The parties adopted the ADAAG as the governing construction specifications because the ADAAG contains detailed construction specifications for curb ramps, including the permissible slopes of the ramps. With regard to permissible cross slope of a curb ramp, the ADAAG 2004 provided:

> **4.8.6 Cross Slope and Surfaces.**  The cross slope
> of ramp surfaces shall be no greater than 1:50 [2%].

*28 C.F.R. Part 36, App. A, Section 4.8.6.*

15.  The ADAAG 2010 changed the permissible grade of a cross slope slightly to 1:48 [2.07%]

> **403.3 Slope.**  The running slope of walking surfaces
> shall not be steeper than 1:20.  The cross slope of
> walking surfaces shall not be steeper than 1:48.

*36 C.F.R., Chapter 11, Part 1191, App. D, 403.3.  See also id. at 406.1 (curb ramps shall comply with Section 405.3); 405.3 (cross slope of ramps shall not be steeper than 1:48).*

16.  PennDOT has supplied an illustrative drawing that confirms that PennDOT will now construct curb ramps with cross slopes that greatly exceed 2%.  The PennDOT drawing shows a cross slope that increases to 14%–which is seven (7) times the cross slope permitted by ADAAG 2010.  *A copy of the PennDOT drawing is attached hereto as Exhibit 2.*

17.  PennDOT attempts to justify its violation of the Settlement Agreements by arguing that PennDOT's more lenient policy is consistent with the 2011 version of a draft document from the Architectural and Transportation Barriers Compliance Board ("Access Board"), entitled Public Rights of Way Access Guidelines ("PROWAG").  The 2011 draft version of the PROWAG has not been adopted by the Access Board, nor by the U.S. Department

8.

of Justice, nor by the U.S. Department of Transportation and it has not been made part of any governmental regulation.

18. The PROWAG 2011 draft provision that is relied upon by PennDOT would impose a 2% cross slope maximum, <u>except</u> at intersections that have no traffic controls or at mid-block crossings. At uncontrolled crossings and at mid-block crossings, the PROWAG 2011 permits the curb ramp's cross slope to be greater than 2% in order to match the road surface profile:

> **R304.5.3 Cross Slope.** The cross slope of curb ramps, blended transitions, and turning spaces shall be 2% maximum. At pedestrian street crossings without yield or stop control and at mid-block pedestrian street crossings, the cross slope shall be permitted to equal the street or highway grade.

19. PennDOT's new policy, however, is a radical departure from even the draft PROWAG 2011. Attorney Bradley's letter of March 15, 2012 explains that PennDOT views the PROWAG 2011 as offering non-binding "guidance" and that PennDOT sees the cross slope limitation at controlled intersections as being "most appropriate for new construction" only. Therefore, PennDOT's policy is that when curb ramps are being remediated or installed at "existing stop or yield controlled crossings", PennDOT will have the ramp's cross slope exceed 2%, without any upper limit, in order to meet the roadway profile.

## PROWAG is Merely a Preliminary Draft, Not the Law –

## PennDOT Agreed to Meet Adaag

20.  The Access Board was created by Congress to provide technical assistance to achieve accessible design, including the promulgation of guidelines and requirements for standards under the ADA.  See 29 U.S.C. §792(b)(2), (3).  The Access Board authored the ADAAG 2004 and ADAAG 2010.  After completing the required rulemaking process, including public comment, the U.S. Department of Justice and the U.S. Department of Transportation formally adopted first the ADAAG 2004 and later, the ADAAG 2010 as their accessibility standards for compliance with Title II of the ADA and Section 504 of the Rehabilitation Act. *DOJ's adoption of ADAAG 2004 is found in 36 C.F.R. Pt. 36, App. A and adoption of ADAAG 2010 is found in 36 C.F.R. Pt. 1191, App. B and App. D. For the DOT*, *See 49 C.F.R. § 37.9, originally citing to ADAAG 2004, 36 C.F.R. Pt. 36, App. A, and now citing to ADAAG 2010, 36 C.F.R. Pt. 1191, App. B and App. D.*

21.  The preliminary nature and uncertain future of PROWAG 2011 is clearly demonstrated by the fact that the Access Board has been proposing and later withdrawing various versions of the PROWAG for almost twenty years.  The Access Board's first PROWAG draft was issued December, 1992.  A second, revised version was then issued in June, 1994.  In June, 2002, the Access Board released its third draft PROWAG.  A fourth draft PROWAG was released in November, 2005.  Then, in July, 2011, the Board issued its fifth revised PROWAG and invited public comment.  At this point, the PROWAG 2011 still has not been adopted as a

governing regulation, and it does not have the weight or power of law. If history is any guide, it is extremely likely that the recent round of public comments will result in additional changes before a final version of the PROWAG is officially adopted as a binding regulation–if it is ever adopted.

22. During the years that the various drafts of the PROWAG were being issued and revised, the ADAAG has been in full force and effect and PennDOT, and the cities of Erie and Meadville, have built nearly seven thousand (7,000) curb ramps according to the requirements of the ADAAG. Specifically, prior to PennDOT's recent unilateral rejection of the Settlement Agreements, during the years 2007 through 2011, PennDOT built approximately 1,023 curb ramps in the Cities of Erie and Meadville that complied with all of the ADAAG's mandates, including the 2% cross slope specification. See *PennDOT's Annual Reports 2007-2011, including measurements for each curb ramp*.

23. Likewise, during the years 2003 through 2011, the City of Erie has built more than 5,000 curb ramps, hundreds of them within the PennDOT right-of-way, that complied with all of the ADAAG specifications, including the 2% cross slope limitation. See *Erie's Annual Reports 2003-2011, including measurements for each curb ramp*.

24. During the years 2008 through 2011, the City of Meadville has built approximately 397 curb ramps, many within PennDOT's right-of-way, with ADAAG compliant

cross slopes.  See *Meadville's Annual Reports 2008-2011, including measurements for each curb ramp*.

25.  PennDOT's violation of the requirements of the Settlement Agreements and its recent subtitution of its own curb ramp policy, will result in the future construction of hundreds of curb ramps with radically steeper cross slopes – up to 7 times and beyond the cross slope permitted by ADAAG 2004 and 2010 – and at intersections that are prohibited even by the draft PROWAG 2011.  PennDOT's violation of the Settlement Agreements will thus cause the Plaintiff class to encounter dangerous curb ramps and thereby deny the Plaintiffs the accessibility guaranteed by the ADA.

26.  Based upon the foregoing, the Plaintiffs respectfully request this Honorable Court enter an order requiring that PennDOT abide by the settlement agreements and adhere to ADAAG specifications with regard to cross slope and to otherwise comply with the requirements under the Settlement Agreements, including but not limited to the requirement that all curb ramps be built to the maximum extent feasible so as to be readily accessible to and usable by Plaintiffs (28 U.S.C. §35.151(b)).

27.  Recently, the Third Circuit analyzed 29 C.F.R. §35.151(b), and its requirement that any "alteration", such as resurfacing of an intersection, requires that the intersection be made "readily accessible to and usable" by Plaintiffs "to the maximum extent feasible".  See *D.I.A. v. SEPTA*, 635 F.3d 87 (3rd Cir. 2011), analyzing *Kinney v. Yerusalim*, 9

F.3d 1067(3rd Cir. 1993) cert. den. 511 U.S. 1033 (1994).  Clearly, ignoring the ADAAG and its 2% cross slope maximum, and choosing to build curb ramps with inaccessible cross slopes exceeding 14%, is not making the intersections readily accessible to Plaintiffs to the maximum extent feasible, and runs afoul of the dictates of 29 C.F.R. §35.151(b).

28.  The Plaintiffs also request that this Honorable Court enter an order awarding attorney's fees and costs to the Plaintiffs in an amount to be later determined.

B.  <u>PennDOT's Failure to Provide Report Regarding Omitted Ramps</u>

29.  During years 2007 through 2011, PennDOT breached the terms of the Settlement Agreements by choosing to omit ramps at many intersections that were repaved.

30.  PennDOT has acknowledged these violations of the Settlement Agreements.  The parties negotiated the manner and method to efficiently remedy PennDOT's failure to install these omitted curb ramps, and this resulted in the Fourth Settlement Agreement.

31.  However, PennDOT now has violated the Fourth Settlement Agreement by failing to file a detailed report that identifies and lists all of these omitted curb ramps.

32. The Plaintiffs request that the Court order PennDOT to file with the Court the mandated detailed written report setting forth the exact number and location of each of the omitted curb ramps as required by the Fourth Settlement Agreement, Section II(C).

Therefore, Plaintiffs respectfully move that the Court enter an Order finding:

   a. PennDOT has violated the terms and conditions of the Fourth Settlement Agreement, specifically the mandate of Section II( c) to file a detailed report listing that identifies curb ramps wrongfully omitted during paving that was done in 2007-2010;

   b. Within 15 days of the filing of the Court's order, PennDOT shall file the Section II( c) report with the Court;

   c. Within 15 days following PennDOT's filing the required detailed written report with the Court, PennDOT shall take all steps reasonably necessary—including participation in meetings and the attendance of representatives who have final decision making authority-to cooperate in good faith to determine, if possible, a mutually agreed upon listing of each and every curb ramp that PennDOT omitted installing at these intersections, and a mutually agreed upon timetable for installing each;

d. PennDOT shall follow and fully comply with all other terms and conditions of the Fourth Settlement Agreement, including PennDOT's obligation to design and construct curb ramps that comply with ADAAG 2010;

e. Plaintiffs shall be awarded reasonable attorney's fees and costs;

f. All other relief the Court deems appropriate.

Respectfully submitted,

ELDERKIN LAW FIRM

By  /s/ Craig A. Markham
    Craig A. Markham, Esquire
    Attorney for Plaintiffs
    150 East Eighth Street
    Erie, Pennsylvania 16501
    (814) 456-4000

HEBERLE & FINNEGAN, PLLC.

By  /s/ J. Mark Finnegan
    J. Mark Finnegan, Esquire
    Attorney for Plaintiffs
    2580 Craig Road
    Ann Arbor, Ml  48103
    (734) 302-3233