IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VOICES FOR INDEPENDENCE, (VFI), ) <br> on behalf of themselves and all others ) <br> similarly situated ) <br>              Plaintiffs ) <br>     v. ) <br> ) <br> COMMONWEALTH OF PENNSYLVANIA ) <br> DEPARTMENT OF TRANSPORTATION; ) <br> ALLEN D. BIEHLER, P.E., in his official ) <br> capacity as Secretary of Transportation of ) <br> the Commonwealth of Pennsylvania ) <br>              Defendants ) | Civil Action No.:  06-78 Erie |

**PLAINTIFFS' MOTION RESPECTING
PENNDOT'S VIOLATIONS OF SETTLEMENT
AGREEMENTS REGARDING OMITTED CURB RAMPS**

AND NOW, the Plaintiffs, by and through their attorneys, HEBERLE & FINNEGAN, PLLC and the ELDERKIN LAW FIRM, file the following Motion Respecting PennDOT's Violations of Settlement Agreements Regarding Omitted Curb Ramps, respectfully representing as follows:

INTRODUCTION

1. It is undisputed that, pursuant to the Settlement Agreements entered in this matter, ADAAG-compliant curb ramps must be installed whenever PennDOT resurfaces or alters a state highway adjacent to sidewalks in the Cities of Erie and Meadville. *See Settlement Agreement December 22, 2006, ¶2 [Doc. 22]; Settlement Agreement April 19, 2007, ¶2(a) [Doc. 32].*

2.  During the years 2007 through 2010, PennDOT admittedly violated the Settlement Agreements by failing to install approximately 1,000 such ramps during its resurfacing work.  When PennDOT's multiple violations were uncovered in 2011, the parties discussed the most efficient and prompt means to rectify PennDOT's breaches of its obligations.  The parties then negotiated and entered into another settlement agreement (Fourth Settlement Agreement) requiring that PennDOT identify the location of each of these so-called "omitted ramps" so that the parties could then work on a time table to cure all of these violations.  The Fourth Settlement Agreement, filed January 30, 2012, states as follows:

> C.  Installing ramps omitted during work performed since 2007
>
> (1)  In a written report, PennDOT shall identify all State street, road and highway intersections newly constructed or altered by PennDOT in the Cities of Erie and Meadville during the years 2007 through 2010, where curb ramps were not installed at each such intersection.  The report shall specify at those intersections each location still containing curbs or other barriers to entry from a street level pedestrian walkway.  PennDOT shall file with the Court and Plaintiffs' Counsel a report comprehensively listing each such location no later than thirty days from today.

*Fourth Settlement Agreement, Section II(C)(1) [Doc. 56]*.

3.  PennDOT then breached this settlement agreement by failing to file the required report.  As a result, on May 23, 2012, the Plaintiffs filed a motion to enforce the settlement agreement.  *See* Doc. 59.  This motion also addressed PennDOT's announcement that

it would no longer abide by the construction standards that were the basis of all of the settlement agreements (the ADAAG Standards).

   4. Almost a month later, on June 20, 2012, PennDOT filed a document that purported to provide the information required under the Fourth Settlement Agreement. *See Doc. 62 and its attachments*. This listing identified a total of 686 omitted ramps within the City of Erie that PennDOT had planned to now install. However, this listing also identified some 26 intersections where PennDOT indicated it would not install any of the omitted ramps. The listing does not identify the number of ramps that will not be installed. Likewise, this document identified 262 ramps to be installed in the City of Meadville that were previously omitted and it identified 5 intersections where PennDOT indicated that it would not install the missing ramps.

   5. Subsequently, on July 11, 2012, PennDOT produced another document entitled "Barriers to Remain, City of Erie" which identified some 49 locations where barriers to access existed but where PennDOT refuses to install required ramps. *A copy of this listing is attached hereto as Exhibit 1*. The *Barriers to Remain* listing also contained some 11 new locations where ramps had been omitted but were not included in the report filed by PennDOT on June 20, 2012. PennDOT's failure to include these intersections in its report was yet another violation of the Fourth Settlement Agreement.

TIME TABLE FOR RAMPS NOT IN DISPUTE

6. PennDOT's June 20, 2012 filing identifies a combined total of 948 ramps in the Cities of Erie and Meadville that should have been, but were not, installed during road work performed in 2007-2010. These omissions were violations of the Settlement Agreements. In recognition of this fact, PennDOT agrees to now install these ramps.

7. In discussions with PennDOT, Plaintiffs are informed that PennDOT will *promise* that the vast majority of all of these omitted ramps will be installed by the end of the 2013 construction season.

8. Plaintiffs hereby request that the court issue an order requiring that PennDOT cure its prior violations of the Settlement Agreements by installing all of these omitted ramps without delay and as soon as possible, but no later than the fall of 2013.

9. To permit Plaintiffs to monitor PennDOT's progress in curing these violations, Plaintiffs request that the Court also direct PennDOT to file monthly progress reports that (a) lists the number and location of each ramp constructed that month and (b) provide the relevant measurements of each ramp and (c) state the estimate of ramps to be completed in each of the remaining months.

CONSTRUCTION STANDARDS FOR OMITTED RAMPS

10. Based upon the authorities cited in Plaintiffs' Motion To Enforce Settlement Agreement with PennDOT [Doc. 59] and Plaintiffs' brief filed in support of that motion [Doc. 67], Plaintiffs also request that the Court issue an order requiring that PennDOT construct all such omitted ramps to be in compliance with the relevant provisions of the ADAAG, as identified and set forth in the Settlement Agreements entered in this matter.

11. Furthermore, there is an unresolved dispute between the parties as to whether PennDOT must install a total of six compliant ramps at unsignalized "T" intersections involving city-owned roadways.  *See* *Fourth Settlement Agreement ¶II(B)(2)*.  At these intersections, the city streets terminate at the state road or highway and there is no traffic-control device for vehicles traveling on the state road.  A total of four ramps could be installed to permit the crossing of the two legs of the state road and a total of two ramps to cross the city street. PennDOT has rejected any obligation to install all six ramps when it resurfaces a state highway at such "T" intersections.  PennDOT has argued that it is "good enough" to provide only partial accessibility at such intersections.

12. The omitted ramp listings ( June 20, 2012 list and *Barriers to Remain* list) do not reveal whether PennDOT is leaving barriers in place at "T" intersections based upon its position that ADA accessibility does not require full access and does not mandate that all six ramps be constructed.

13. It is the Plaintiffs' position that the resurfacing of the intersecting state highway is an alteration that affects the usability of the entire intersection, requiring that all six ramps be installed. Therefore, Plaintiffs request that the Court issue an order requiring PennDOT to install 6 curb ramps at such "T" intersections.

## PENNDOT MUST INSTALL ALL OF THE DISPUTED RAMPS

14. As stated above, PennDOT's recent list of omitted ramps and *its Barriers to Remain* list reflect PennDOT's decision to leave barriers in place and to refuse to install ramps at various locations in the Cities of Erie and Meadville. The Settlement Agreements provide a detailed process that must be followed when PennDOT seeks to deviate from its construction obligations under those agreements. This process, known by the parties by the acronym TIF ("Technically Infeasible Form"), is described as follows:

> At any time during the term of this Settlement Agreement that . . . PennDOT believes that site conditions at any particular intersection scheduled for improvement prohibits or makes unnecessary construction or alteration in full compliance with each of the standards set forth above . . . [PennDOT], within 15 days of discovery of the matter, shall inform Plaintiffs' counsel in writing. This writing shall list which engineer(s) have reviewed the intersection, the location of the intersection, and a statement of which standard(s) cannot be met, why not, and how much of a deviation from the standard(s) is contemplated. Unless due to factors beyond PennDOT's control, this writing should also include a sketch of any

> proposed deviant curb ramp, with the proposed final measurements for each slope, cross slope, and lip. If Plaintiffs do not object in writing to the notice within 15 days from the postmark of the written notification, . . . PennDOT may presume that the deviation is acceptable to the Plaintiffs and may begin construction of that particular curb ramp.

*Settlement Agreement December 22, 2006, ¶12 [Doc. 22]. See also Settlement Agreement April 19, 2007, ¶13 [Doc. 33].*

    15.  The Settlement Agreements incorporate the ADAAG's "technically infeasible" standard as the test for any claim that a curb ramp cannot be constructed.

> **Potential Exceptions Pursuant to 28 C.F.R. Part 36, App. A §4.1.6(j).**  The parties agree that the ADAAG at 28 C.F.R. Part 36, App. A §4.1.6 and 4.1.1.5(a); 4.1.6(3); and 28 C.F.R. 35.151(c), to the extent applicable, shall be the standard to judge the validity of any defendant assertions that construction or alterations cannot or are not required to meet in full the construction and design standards set out in the paragraphs above.

*Settlement Agreement December 22, 2006, ¶11 [Doc. 22].  <u>See</u> also Settlement Agreement April 19, 2007, ¶12 [Doc. 33].*

    16.  This technically infeasible exemption is very narrow and it applies only when site conditions make it virtually impossible to comply with the ADAAG construction standards.

> Technically infeasible. With respect to an alteration of a building or a facility, something that has the little likelihood of being accomplished because existing structural conditions would require removing or altering a load-bearing member that is an essential part of the structural frame; or because other existing or physical or site constraints prohibit modification or addition of elements, spaces, or features that are in full and strict compliance with the minimum requirements.

*28 C.F.R. Part 36, App. A §4.1.6(j) Definitions*.

17. With regard to PennDOT's obligations to cure its past violations relating to the 2007-10 omitted ramps, the Fourth Settlement Agreement provides a similar process that must be followed if PennDOT contends that a barrier should not be removed.

> In the rare circumstance that PennDOT believes that on a State street, road or highway it should leave in place a curb or other barrier to entry to a pedestrian level walkway, or that it should replace an existing ramp with a curb or other barrier, it must first adhere to the following procedure:
>
> a. Written Notice. PennDOT shall within ten days of discovering the alleged site conditions which it believes supports such action, inform Plaintiffs' counsel in writing via e-mail and hard copy. This writing shall identify the engineer(s) who have reviewed the intersection(s), shall identify the location of the intersection(s), and shall provide a statement of the circumstances which PennDOT believes supports its proposed action. The Parties shall allow 15 days from the postmark or e-mail notification to resolve the matter.

   b. Unresolved Disputes. In the event that the Parties cannot resolve a dispute concerning removing barriers at any such intersection(s), the Parties expressly agree that the Court expressly retains jurisdiction to resolve any disputes under the terms of this Order, as well as the Court's earlier Settlement Agreement Orders. Either party may file a motion with the Court to address any unresolved issues. Any final resolution under this paragraph shall be treated as a decision by the Court.

*Settlement Agreement January 30, 2012, ¶4 [Doc. 56]*.

  18. PennDOT has failed to comply with the foregoing processes and thus PennDOT has once more breached its obligations under the Fourth Settlement Agreement.

  19. As a result of PennDOT's repeated violations of the settlement agreements, the Plaintiffs respectfully request that this Honorable Court issue an order compelling PennDOT to install all of these disputed ramps immediately, and certainly by the end of 2013. At this late date, and considering the additional delays that it would cause Plaintiffs to suffer, PennDOT should not be given the opportunity to submit this dispute to the TIF processes.

        Respectfully submitted,

        HEBERLE & FINNEGAN, PLLC.

        By /s/ J. Mark Finnegan
         J. Mark Finnegan, Esquire
         Attorney for Plaintiffs
         2580 Craig Road
         Ann Arbor, Ml  48103
         (734) 302-3233

ELDERKIN LAW FIRM

By  /s/ Craig A. Markham
     Craig A. Markham, Esquire
     Attorney for Plaintiffs
     150 East Eighth Street
     Erie, Pennsylvania 16501
     (814) 456-4000